IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MADISEN ULRICH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case. No: 3:20-cv-1018-RAH-SRW |
| | ) [WO] |
| 319 BRAGG STUDENT | ) |
| HOUSING AUBURN, AL LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

"Stop, look, and listen" has been the general rule in Alabama governing train collisions with pedestrians for over 100 years and has regularly served as a proximate causation hurdle for a plaintiff seeking redress against a railroad owner and operator. *See Nashville, Chattanooga & St. Louis Ry. v. Vincent*, 66 So. 697, 698 (Ala. 1914); *Hooks v. Huntsville Ry., Light & Power Co.*, 41 So. 273, 273 (Ala. 1906). That hurdle is implicated in this lawsuit brought by Plaintiff Madisen Ulrich, a college student at Auburn University, who was hit by a train while walking along railroad tracks on a clear, fall afternoon. Ulrich acknowledges that the relief she seeks from Defendant CSX Transportation, Inc. is contingent upon this Court's acceptance of a "novel theory" against a railroad company. This theory, however, finds no support under Alabama law and turns the general rule upside down. Accordingly, this Court concludes that Defendant CSX Transportation, Inc.'s summary judgment motion,

1

which invokes the general rule, is due to be granted. Therefore, Ulrich's claims against that Defendant are dismissed.

## I.   JURISDICTION

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §1332 because all the parties to this action are citizens of different states and the amount in controversy exceeds $75,000.

## II.   STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Further, Fed. R. Civ P. 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. If the movant meets this threshold, the nonmoving party must "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (cleaned up).

On summary judgment, a court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the nonmoving party. *See*

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1060 (11th Cir. 1994). Any factual disputes will thus be resolved in the nonmovant's favor, but only when sufficient competent evidence supports the nonmoving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).

A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, that party must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. If the nonmovant's response relies on nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995).

### III. FACTUAL BACKGROUND

On October 4, 2018, Ulrich was a 20-year-old student at Auburn University, living at an apartment complex known as 319 Bragg. The rear parking lot of 319 Bragg abutted railroad tracks owned and maintained by CSX. (Doc. 61 at 2–3.) To attend her classes, Ulrich had to cross over the tracks at least twice daily. (Doc. 85-1 at 3.)

On that tragic afternoon, Ulrich was returning to 319 Bragg from her classes. (Doc. 61 at 2, 13; Doc. 85-1; Doc. 85-20.) The weather was clear, and the line of sight up and down the tracks was unobstructed, except for the vehicles stopped at the grade crossing that were waiting to cross. (Doc. 85-23; Doc. 103-1; Doc. 104-1 at 3.)

Video of the accident shows that as a CSX train traveled down the tracks at approximately 38 mph (a speed well below the 60 mph limit),[1] Ulrich approached the marked grade crossing from the right as she walked down North Donahue Drive. (Doc. 69-1 at 5; Doc. 73-1; Doc. 103-1.) When she approached the grade crossing, the crossing gate was activated and down, thereby blocking vehicles and pedestrians from crossing over the tracks while the train approached. (Doc. 69-1 at 5; Doc. 103-1; Doc. 103-2; Doc. 104-1 at 3.) The mast-mounted crossing lights were activated

---

[1] The train had a video camera, called a Locomotive Digital Recorder (LDR), in the front of the train that recorded the accident. (*See* Doc. 73-1.) Ulrich does not recall any details from the accident. (Doc. 85-1.)

and flashing (Doc. 69-1 at 5; Doc. 103-1; Doc. 103-2; Doc. 104-1 at 3), and the train's horn was sounding (Doc. 69-1 at 4).

Despite all these warnings, Ulrich proceeded to walk toward the grade crossing while also talking on her cellular phone. She then turned to her right within feet of the activated gate. (Doc. 61 at 13; Doc. 69-1 at 5, 61; Doc. 83-1 at 2; Doc. 85-20; Doc. 104-1 at 3.) From there, she walked off the grade crossing and onto the crushed granite right-of-way parallel with the tracks with her back to the approaching train. As she alleges in her Complaint, "she was on her phone talking to her mother while attempting to cross CSX's tracks via her usual and customary path, as she had done hundreds of times before." (Doc. 61 at 13.) Tragically, within feet of the grade crossing, Ulrich was struck by the train's pilot (sometimes called a cow catcher). Fortunately, she survived the accident.

## IV. PROCEDURAL HISTORY

Ulrich initially filed this lawsuit on September 25, 2020, in the Northern District of Illinois against CSX Transportation, Inc., 319 Bragg Student Housing Auburn, AL LLC, and Greystar Worldwide, LLC. (Doc. 1.) The case subsequently was transferred to this Court in the interests of justice under 28 U.S.C. § 1631 (2018). (Doc. 28.)

On the last day to amend the pleadings, Ulrich filed a First Amended Complaint but without seeking leave of court and without the consent of opposing

counsel. (Doc. 54.) As applicable to CSX, the amendment added a claim for premises liability/negligence. (Doc. 54.) The amended complaint was stricken for failure to comply with Fed. R. Civ. P. 15(a)(2). (Doc. 55.)

Several days later, Ulrich filed a motion for leave to file the amended complaint. (Doc. 58.) The motion noted CSX's objection to the amended complaint to the extent it added a new claim for premises liability. The other defendants did not oppose the motion, but they reserved the opportunity to attack the amended complaint with any defenses that were apparent and applicable.

The Court ultimately granted Ulrich's motion, to which CSX then filed a motion to reconsider, arguing that Ulrich had failed to make any showing of good cause for filing the motion for leave after the amended pleading deadline. (Doc. 60; Doc. 63.) Before the Court could rule on the motion to reconsider, CSX filed a motion for summary judgment on all claims asserted against it, including the premises liability claim that remained the subject of CSX's motion to reconsider. (Doc. 67; Doc. 69; Doc. 73.) Since that time, both parties have confirmed that they want the Court to rule upon the merits of CSX's summary judgment motion before requiring the parties to engage in any further discovery in this case.[2]

---

[2] Because CSX moves for summary judgment on the premises liability claim on the same basis that she advances for dismissal of the wantonness claim, the Court will deny CSX's motion to reconsider as moot.

## V.   ULRICH'S THEORY

Ulrich pursues two causes of action against CSX in her First Amended Complaint, which both focus on the same course of conduct.

Ulrich faults CSX as negligent and wanton for not taking more measures to eliminate the risk to pedestrians of being hit by trains at "trespassing hotspots," which are "unreasonably dangerous." (Doc. 61 at 14, 21.) Therefore, Ulrich alleges that CSX bears an affirmative duty to either install a barrier alongside a crossing and parallel with the tracks or install a pedestrian overpass. (Doc. 61 at 14.) Either measure, according to Ulrich, would minimize the risk of getting hit by a train, especially for intoxicated or distracted pedestrians. However, even by Ulrich's own admission, her legal "theory of the case is novel" because it shifts responsibility for a train-pedestrian collision to the railroad owner-operator at a hotspot location. (Doc. 77 at 1.)

Importantly, Ulrich does not fault the train operator for the operation of the train or CSX for the design of the train involved in the accident. In other words, Ulrich does not claim that the train was traveling too fast, that the operator should have applied his brakes sooner than he did, or that the operator failed to blow the train's horn timely or adequately. She also does not claim that the grade crossing was improperly maintained, such that Ulrich's vision or line of sight was obscured by overgrown vegetation or some other obstruction within CSX's control. Nor does

she allege that a warning signal was inoperable or that the crossing was improperly marked. Instead, Ulrich's theory travels solely upon an allegation that CSX should have installed a barrier or overpass at a known hotspot to protect Ulrich as a distracted pedestrian.

## VI.   DISCUSSION

For purposes of CSX's summary judgment motion, the main issue for consideration is proximate causation which is a prima facie element common to negligence/premises liability and wantonness claims. *See Norfolk S. Ry. Co. v. Johnson*, 75 So. 3d 624, 646 (Ala. 2011) ("Proximate cause is an essential element of both negligence claims and wantonness claims."); *Sessions v. Nonnenmann*, 842 So. 2d 649, 651 (Ala. 2002) ("In a premises-liability case, the elements of negligence are the same as those in any tort litigation: duty, breach of duty, cause in fact, proximate or legal cause, and damages.") (cleaned up); *see Williamson v. Tyson Foods, Inc.*, 626 So. 2d 1261, 1266 (Ala. 1993) (holding that the owner of a chicken house with an automatic chicken feeding system could not be held liable for injury to an employee's child because the employee's failure to protect her child was the proximate cause of the injury). CSX claims that Ulrich cannot meet her proximate

causation burden because of the stop, look, and listen rule applicable to pedestrians in Alabama.[3] *See, e.g., Vincent*, 66 So. at 698; *Hooks*, 41 So. at 273.

The well-established rule of stop, look, and listen was discussed at length by the Alabama Supreme Court in *Johnson*:

> [D]eeply rooted in Alabama law is the rule that a person who fails to stop, look, and listen before crossing a railroad track is, in the absence of special circumstances, ***contributorily negligent as a matter of law***. In *Lambeth v. Gulf, Mobile & Ohio R.R.*, Justice Simpson, writing for this Court, stated: The general rule, and governing here to sustain the ruling of the trial court, is that where a motorist fails to Stop, Look & Listen before crossing a railroad track, and he thereby runs into or collides with a train on its track at a public crossing, ***he is guilty of contributory negligence as a matter of law and his negligence will be treated as the sole proximate cause of his injuries.*** And in *Callaway v. Adams*, this Court wrote: The contention that there was error in refusing the general affirmative charge as to the contributory negligence of plaintiff is sought to be sustained by the generally stated rule of absolute duty at any railroad crossing where cars and locomotives are liable to be moving of anyone attempting to cross the railroad track to stop, look and listen, and a denial of recovery as for simple initial negligence of the railroad if the failure to discharge such duty proximately caused the injury. The doctrine is rested on the duty of the traveler to keep a continuous lookout as he approaches a railroad crossing until he can see that no train is dangerously near. So, when the undisputed facts disclose that by a proper lookout he could not fail to see the train, he cannot acquit himself of contributory negligence by saying he looked and did not see it. But it cannot be affirmed as a matter of law in every case and under all circumstances that there is an absolute duty to stop, look and listen before a traveler may go upon a railroad crossing, as where one, in the exercise of reasonable care, did not know of the crossing. What is, or is not, ordinary care often depends upon the facts of the particular case. The rule, stop, look, and listen, is not arbitrary or invariable as to time and place. It may depend in some measure upon the familiarity of

---

[3] For purposes of CSX's summary judgment motion, it is not necessary for the Court to determine whether Ulrich is properly classified as a trespasser, licensee, or invitee.

> the one passing, with the place of crossing. Thus the principle has been developed that the arbitrary rule of stop, look and listen is affected by whether or not the plaintiff knew or by reasonable care could have known he was about to cross the railroad tracks. Thus, it remains the law in this state that when a motorist, in violation of § 32–5A–150, fails to stop, look, and listen before crossing a railroad track and that failure results in injury or death caused by a collision with a passing train, the motorist is guilty of contributory negligence as a matter of law, unless special circumstances existing at the crossing suggest that even by keeping a proper lookout he could not have been aware of the presence of the railroad crossing or of the danger presented by that crossing.

*Johnson*, 75 So. 3d at 640–41 (emphasis added) (cleaned up).[4]

The takeaway from *Johnson* is twofold as it relates to a pedestrian's failure to abide by the stop, look, and listen rule. First, it is the law in Alabama that when a pedestrian "fails to stop, look, and listen" before crossing or traveling upon railroad tracks and that failure results in injury or death caused by a collision with a passing train, the pedestrian is guilty of contributory negligence as a matter of law unless special circumstances exist that show that even by keeping a proper lookout, the pedestrian could not have been aware of the presence of the railroad crossing or of the danger presented by that crossing. *Johnson*, 75 So. 2d at 641 (citing cases).

---

[4] It has long been the law of Alabama that just like a motorist, a pedestrian has a duty to stop, look, and listen before attempting to cross railroad tracks. *See, e.g.*, *Louisville & Nashville R.R. Co. v. Turner*, 68 So. 277, 278 (Ala. 1915) ("[W]e hold that she was guilty of contributory negligence in not stopping and looking in both directions immediately before she went upon the track whereon she was stricken; and that her failure to do so was the proximate cause of her injury.").

Second, it is also the law in Alabama that the pedestrian's own actions in failing to follow the rule will be treated as the sole proximate cause of his injuries. *See Johnson*, 75 So. 2d at 641; *Vincent*, 66 So. at 698.

But as Alabama case law makes clear, there are exceptions (or "special circumstances") to the general rule. Those exceptions are narrow and turn on whether, by keeping a proper lookout, a pedestrian could not have been aware of the presence of the railroad crossing or of the danger presented by that crossing. *See Stallworth v. Ill. Cent. Gulf R.R.*, 690 F.2d 858, 866 (11th Cir. 1982) (concluding that there was a jury issue because there was evidence of darkness, foggy weather, poor condition of the crossbuck, and the absence of other warning devices, that created a peculiar environment or hazardous condition that could make the plaintiff's failure to stop not negligent); *Ridgeway v. CSX Transp., Inc.,* 723 So. 2d 600, 607 (Ala. 1998) ("[T]he motorist is guilty of contributory negligence as a matter of law, unless special circumstances existing at the crossing suggest that even by keeping a proper lookout he could not have been aware of the presence of the railroad crossing or of the danger presented by that crossing."); *Callaway v. Adams*, 40 So. 2d 73, 77 (Ala. 1949) (concluding that the special circumstance exception applied where there was evidence that overhanging branches of the trees that hid the signal light from view bore on the question of whether the motorist could see the train even if he kept a proper lookout).

Unsurprisingly, Ulrich does not dispute the stop, look, and listen rule, nor its applicability to this case. Instead, she largely ignores it, only addressing it when alleging that she falls under the special circumstances exception because she was crossing a pedestrian hotspot. But Ulrich's novel theory, where she imposes an enhanced duty on railroads to minimize risks for distracted pedestrians, is contrary to long-settled Alabama law.[5] Ulrich's theory turns the stop, look, and listen doctrine on its head and essentially makes a railroad company's decision not to construct a bridge or a barrier the sole proximate cause of an accident despite a pedestrian's unambiguous and unabridged violation of the general rule.

Unfortunately for Ulrich, theories that focus on a railroad's fault rather than a pedestrian's failure to adhere to the stop, look, and listen rule have been consistently rejected by courts. *See, e.g., Borden v. CSX Transp., Inc*., 843 F. Supp. 1410, 1424 n.9 (M.D. Ala. 1993) (affirming summary judgment for a railroad on negligence and wantonness, and stating that even "if a Defendant in the instant case had been wanton or negligent, such wantonness or negligence could not have been a proximate cause

---

[5] Ulrich argues for the application of the Restatement (Second) of Torts § 334 (1965), as applied by an Illinois state court in *McKinnon v. Ne. Ill. Reg'l R.R. Corp*., 635 N.E.2d 744 (Ill. App. 1994). But Ulrich's case must proceed under Alabama law and its long-standing precedent concerning the stop, look, and listen rule. Perhaps the more-forgiving Illinois rule was the logic behind Ulrich's initial attempt to pursue this case in an Illinois court. In any event, this Court's research does not reveal the application of § 334 in any Alabama cases, let alone in train accident cases involving adults where the stop, look, and listen rule is implicated. *See Laster ex rel Laster v. Norfolk S. Ry. Co*., 13 So. 3d 922, 927–30 (Ala. 2009) (applying Restatement (Second) of Torts § 339 in a child trespasser case in which the child lost a foot while climbing a train)).

of the subject accident."); *Vincent*, 66 So. at 698 (concluding that pedestrian's own fault barred claim even though the train engineer was negligent in not ringing the bell of his locomotive).

Additionally, plaintiffs asserting personal excuses for why they failed to stop, look, and listen, have fared no better than those focusing on the railroad's fault. *See, e.g.*, *Baker v. CSX Transp., Inc.*, 46 F. Supp. 2d 1230, 1233 (M.D. Ala. 1999) (granting summary judgment in favor of railroad involving an accident with an *intoxicated* driver); *Ridgeway*, 723 So. 2d at 606–07 (explaining that even if a plaintiff was *distracted* as he approached the crossing, it did not create a jury question with regards to contributory negligence because the plaintiff was under a statutory and common law duty to stop, look, and listen before crossing).

While a barrier or fence may have impeded Ulrich's efforts to venture off the grade crossing onto the railroad right of way, that does not relieve Ulrich of her statutory and common law obligation to stop, look, and listen. Because again, Ulrich's failure to stop, look, and listen, and therefore Ulrich's own actions, constituted the sole proximate cause of the accident.

Special circumstances may exist when a pedestrian's view of tracks unfamiliar to her is obscured by something that is within the control of the railroad. But that is not the circumstance presented here, where Ulrich's line of sight was not obscured on a set of tracks of which she was thoroughly familiar. On the contrary,

she had a clear line of sight on a clear day with approaching-train warnings that were flashing and sounding within feet of her direction of travel. Yet Ulrich, while distracted by her cell phone usage, failed to notice all the warnings, violated the stop, look, and listen rule, and was struck by a train.

The Court sees no better set of facts warranting application of the general rule than those presented here.[6] Only by radically reimagining the stop, look, and listen rule and the special circumstances exception could Ulrich's novel theory find support. But that is not within this Court's power.[7]

## VII. CONCLUSION

Ulrich's conduct was the sole proximate cause of her injuries because she failed to adhere to the stop, look, and listen rule. Therefore, any alleged negligence or wantonness by CSX cannot be the proximate cause of her alleged injuries.

Accordingly, it is hereby **ORDERED** as follows:

(1) The Motion to Reconsider (Doc. 63) filed by Defendant CSX

---

[6] In its motion, CSX focuses its argument on proximate causation. But Ulrich's violation of the rule also serves as a complete bar to her premises liability/negligence claim under a contributory negligence theory.

[7] A federal court sitting in diversity cannot remake Alabama tort law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 at 78 (1938) (holding that Congress cannot declare substantive rules of state common law, whether they be commercial law or tort law, and therefore federal courts sitting in diversity cannot either); *Salinero v. Johnson & Johnson*, 995 F.3d 959, 968 (11th Cir. 2021) ("Without some indication that Florida intends to recognize so significant a change in the law, a federal court sitting in diversity ought not to do so."); *Nicolaci v. Anapol*, 387 F.3d 21, 27 (1st Cir. 2004) ("Federal courts sitting in diversity should be cautious about pushing state law to new frontiers.").

Transportation, Inc. is **DENIED** as moot;

(2) The Motion for Summary Judgment (Doc. 67) filed by Defendant CSX Transportation, Inc. is **GRANTED**;

(3) The Motion to Strike (Doc. 88) filed by Defendant CSX Transportation, Inc. is **DENIED** as moot; and

(4) There being no further claims against Defendant CSX Transportation, Inc., this Defendant is hereby dismissed as a defendant from this action.

**DONE**, on this the 17th day of September, 2021.

                                                /s/R. Austin Huffaker, Jr.
                                          R. AUSTIN HUFFAKER, JR.
                                          UNITED STATES DISTRICT JUDGE